# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DARREN WRASPIR,         )
                              )
          Plaintiff,      )
                              )
v.                         )         **Case No. CIV-14-409-F**
                              )
CAROLYN W. COLVIN,     )
Acting Commissioner of the     )
Social Security Administration,   )
                              )
         Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff Darren Wraspir brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.   United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.  Having reviewed the administrative record (Doc. No. 10, hereinafter "R. _") and the parties' arguments and authorities, the undersigned recommends that the Commissioner's decision be affirmed.

### PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his DIB application on October 28, 2010, seeking benefits on the basis of his back injury, chronic obstructive pulmonary disease, cardiomegaly, and a compression fracture in his back.  R. 313-16, 348, 352.  Following initial denial of his

application and an administrative hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on August 10, 2012.  R. 173-240, 247-49.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of February 3, 2009.  R. 224; *see* 20 C.F.R. § 404.1571.  At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, degenerative joint disease, and hepatitis C.  R. 224-25; *see* 20 C.F.R. § 404.1520(c).  At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 225; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments.  R. 226-27; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(a) except he can climb stairs, crawl, or stoop only occasionally.  He can frequently balance and kneel.  He cannot climb ladders or scaffolding, and he cannot work in exposure to hazards such as unprotected heights or moving machinery.

R. 226; *accord* R. 228.  The ALJ determined at step four that Plaintiff was unable to perform any of his past relevant work as a well driller, maintenance mechanic, route driver, or sewer line repairer.  R. 228.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform.  R. 229; *see* 20 C.F.R. § 404.1520(a)(4).  Taking into

consideration the testimony of a vocational expert ("VE") at the administrative hearing regarding the degree to which Plaintiff's nonexertional limitations narrow the range of work he is capable of performing, the ALJ concluded that Plaintiff could perform the light, unskilled occupations of counter clerk, record clerk, and assembler, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 229. On that basis, the ALJ held that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from February 3, 2009, through the date of the decision. R. 222, 229; *see* 20 C.F.R. § 404.1520(g).

Plaintiff's request for review of this decision was denied by the SSA Appeals Council on January 23, 2014. R. 4-10, 420-24. Thus, the ALJ's unfavorable decision stands as the Commissioner's final determination of Plaintiff's DIB application. *See* 20 C.F.R. § 404.981. Plaintiff now appeals.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s]

the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

On appeal, Plaintiff raises three claims of error. First, Plaintiff alleges that the SSA Appeals Council improperly failed to consider additional evidence submitted by Plaintiff during the pendency of his administrative appeal. Pl.'s Br. (Doc. No. 18) at 14-17.[1] Next, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence and thus "is legal error." Pl.'s Br. at 17-20. Finally, Plaintiff challenges the credibility assessment undertaken by the ALJ in the course of reaching the RFC determination. Pl.'s Br. at 21-25. The undersigned addresses each argument in turn.

A. *The Appeals Council's Rejection of Late-Submitted Evidence*

1. *Applicable Standards*

Pursuant to SSA regulations, the Appeals Council

will consider all the evidence in the [ALJ] hearing record as well as any new and material evidence submitted to it *which relates to the period on or before the date of the [ALJ] hearing decision*. If [a claimant] submit[s] evidence which does not relate to the period on or before the date of the [ALJ] hearing

_____

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

4

decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his or her] right to file a new application.

20 C.F.R. § 404.976(b)(1) (emphasis added); *accord id.* § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision."). When a claimant seeks administrative review, the Appeals Council "shall evaluate the entire record," "including the new and material evidence submitted *if* it relates to the period on or before the date of the [ALJ] hearing decision," and shall "review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of evidence currently of record." *Id.* § 404.970(b) (emphasis added).

Whether evidence submitted by the claimant to the Appeals Council is "new, material, and chronologically pertinent," as required to qualify for consideration on administrative appeal pursuant to §§ 404.970(b) and 404.976(b)(1), "is a question of law subject to our *de novo* review." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003); *accord Krauser v. Astrue*, 638 F.3d 1324, 1328, 1329 (10th Cir. 2011). "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004); *accord Wall*, 561 F.3d at 1064. If, however, "the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings." *Chambers*, 389 F.3d at 1142.

*2. Background*

After the ALJ's decision was issued but prior to disposition of his administrative

appeal, Plaintiff, through counsel, submitted additional briefing and other evidence to the Appeals Council. *See* R. 5, 11-41, 60-130, 134-47, 159-61, 164-72. The Appeals Council considered Plaintiff's brief but declined to consider the new evidence, all of which was created after the ALJ's hearing decision of August 10, 2012:

> In looking at your case, we considered the reasons you disagree with the decision in [your brief dated 9/14/12].
>
> We found that this information does not provide a basis for changing the [ALJ's] decision.
>
> We also looked at medical records dated August 22, 2012 through November 11, 2013, from various sources including Dr. Hugh G. McClure, Robinson Clinic, Digestive Disease Specialists, Integris Regional Hospital, and Dr. John A. Munneke. The [ALJ] decided your case through August 10, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 10, 2012.
>
> If you want us to consider whether you were disabled after August 10, 2012, you need to apply again. The new information you submitted is available in your electronic file for you to use in your new claim. . . . .
>
> If you file a new claim for disability insurance benefits within 6 months after you receive this letter, we can use September 14, 2012, the date of your request for review, as the date of your new claim.

R. 4-5; *see* R. 8-9, 420-24. The Appeals Council concurrently denied review of Plaintiff's case. R. 4; *see* 20 C.F.R. § 404.970(a), (b).

*3. Discussion*

Plaintiff objects that the Appeals Council's refusal to consider the additional evidence was improper because, although "the records are dated after the ALJ's decision was issued[,] they relate to [Plaintiff's] ongoing problems discussed at [the] hearing and provide additional evidence to support his claims of ongoing and disabling pain." Pl.'s Br. at 15. According to Plaintiff, the additional evidence was new, material, and temporally

related to the time period of the ALJ's decision, such that the Appeals Council's failure to consider the evidence was a legal error that requires remand. Pl.'s Br. at 16. The Commissioner responds by discussing the contents of the late-submitted evidence and arguing that Plaintiff's attempted submission "did not show that the ALJ's finding that Plaintiff was not disabled through the ALJ's decision was contrary to the weight of the evidence during the period at issue." Def.'s Br. (Doc. No. 23) at 14-15.

To support his contention that the additional evidence was chronologically pertinent to the relevant time period and should have been accepted by the Appeals Council, Plaintiff relies upon the unpublished Tenth Circuit decision *Aragon v. Apfel*, No. 98-2097, 1998 WL 889400 (10th Cir. Dec. 22, 1998). Pl.'s Br. at 16. This case is not dispositive, however: in *Aragon*, the Appeals Council *considered* a treating physician's opinion (made "just days" after the ALJ's decision) but found that this late-submitted evidence did not provide a basis for changing the ALJ's denial of benefits. *See Aragon*, 1998 WL 889400, at *2, *3.[2] The Tenth Circuit characterized the evidence as "temporally relevant" without elaboration and held that the Appeals Council's "reflexive confirmation of the ALJ's determination" did not adequately support the rejection of this treating physician opinion, which was "contrary new evidence from the same medical authority the ALJ relied on" in reaching the RFC assessment. *Id.* at *3. Here, the Appeals Council refused to consider the late-submitted evidence at all, and, as explained further below, with one exception Plaintiff's attempted

---

[2] Although the background section of the decision contains the statement that the Appeals Council "summarily rejected the new evidence," the analysis clarifies that the Appeals Council concluded that "the additional evidence provides no basis for changing the ALJ's decision"—a conclusion that could be reached only upon consideration of the new evidence. *See Aragon*, 1998 WL 889400, at *1, *3.

submissions were not "temporally relevant" as was the treating physician's opinion in *Apfel*. *See id.*; *infra*; R. 5.

The Commissioner cites *O'Dell v. Shalala* for the proposition that this Court's substantial-evidence inquiry includes examination of the late-submitted evidence, but, again, in that case the Appeals Council *accepted* the new evidence submitted by the claimant after the ALJ's decision was issued, rather than rejecting the evidence as nonqualifying under the regulations. *O'Dell* does not govern the scope of the Court's examination on the current appeal. *See O'Dell*, 44 F.3d 855, 857 (10th Cir. 1994) ("The Appeals Council decided that the new evidence did not provide a basis for changing the ALJ's decision and denied review.").[3]

The undersigned therefore has undertaken an independent review of relevant authority from the Tenth Circuit to inform his determination of the pertinent issue: whether the Appeals Council committed legal error in concluding that Plaintiff's late-submitted evidence was "about a later time" and so did not "relate[] to the period on or before the date of the [ALJ] hearing decision." R. 5; 20 C.F.R. §§ 404.970(b), .976(b)(1). For the reasons

---

[3] The Tenth Circuit's broad statement in *O'Dell* that "the new evidence becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence" was expressly premised upon that new evidence having qualified for inclusion in the record under 20 C.F.R. § 404.970(b). *See O'Dell*, 44 F.3d at 859. Further, the Tenth Circuit has since clarified:

> If the evidence does qualify [as new, material, and chronologically relevant] *and* the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard.

*Chambers*, 389 F.3d at 1142 (emphasis added) (citing *O'Dell*, 44 F.3d at 859).

outlined below, the Appeals Council did not so err.

Following the ALJ's issuance of her written decision on August 10, 2012, Plaintiff submitted evidence to the Appeals Council consisting of nearly 100 pages of medical records, letters, and other items (excluding transmission coversheets and duplicate material). As noted above, none of the evidence submitted was authored or generated prior to the issuance of the ALJ's decision. In one unpublished decision, the Tenth Circuit has indicated that the fact that a record is created after the ALJ's decision has been issued can be sufficient, by itself, for a reviewing court to conclude that the record does not qualify as chronologically related under the relevant regulations. *See Tollett v. Barnhart*, 60 F. App'x 263, 265 (10th Cir. 2003); *accord Parks v. Colvin*, No. CIV-13-450-R, 2014 WL 2589310, at \*1, \*3-4 (W.D. Okla. June 9, 2014); *cf. Threet*, 353 F.3d at 1188, 1191 (finding "timeliness" of evidence was "no problem" where evidence was generated one day prior to ALJ's decision). In other decisions, however, the court has applied a more nuanced approach by scrutinizing the nature of individual items of evidence for purposes of the "relates to" criterion of §§ 404.970(b) and 404.976(b)(1). *See, e.g.*, *Wall*, 561 F.3d at 1064; *Chambers*, 389 F.3d at 1143-44; *Wilson v. Apfel*, No. 99-3310, 2000 WL 719457, at \*2 (10th Cir. June 5, 2000); *Breedlove v. Callahan*, No. 97-7024, 1997 WL 572145, at \*2 (10th Cir. Sept. 8, 1997); *cf. Tollett*, 60 F. App'x at 265 (rejecting records based upon their post-decision creation date but also noting that "the evidence does not demonstrate that [claimant] was disabled by depression as of the date of the ALJ's decision because it does not indicate that he was suffering from depression" prior to that creation date). Applying the latter approach, the undersigned examines Plaintiff's late-submitted evidence, relying

upon the factors set forth by the Tenth Circuit to determine whether any item of Plaintiff's evidence was improperly rejected by the Appeals Council as failing to qualify for consideration under 20 C.F.R. §§ 404.970(b) and 404.976(b)(1).

- *Dr. David Neumann's Progress Notes*

First, Plaintiff submitted a series of Progress Notes from David A. Neumann, MD, reflecting four office visits between May 2013 and January 2014 for ongoing treatment of Plaintiff's hepatitis C. R. 11-25, 77-80. As discussed by the ALJ in her written decision, Plaintiff had been seen by Dr. Neumann once during the relevant disability period, in November 2011. *See* R. 224, 650-52 (Exhibit 15F). There is no indication in the record that Plaintiff had any treatment from Dr. Neumann in the intervening period, prior to his post-decision office visit in May 2013. *See* R. 77 (noting on May 14, 2013, that Plaintiff "is here for a new patient evaluation").

Dr. Neumann's Progress Notes were made between 9 and 17 months after the ALJ's decision was issued. The Tenth Circuit has held that a comparable length of time between the ALJ decision and the creation of medical evidence rendered such evidence "not relevant to the appropriate time period" and therefore unable to "qualify as record evidence." *See Chambers*, 389 F.3d at 1143-44 (holding that electromyography (EMG) test conducted six months later did not qualify and providing additional rationale); *Wilson*, 2000 WL 719457, at *2 (refusing to consider evidence generated more than 15 months after ALJ's decision and providing additional rationale). Further, with the exception of noting Plaintiff's own self-reported symptoms and history, Dr. Neumann's Progress Notes contain no information "indicative of [Plaintiff's] condition," or "indicat[ing] that he was suffering from"

symptoms related to his hepatitis C, prior to August 10, 2012—a lack of information that the Tenth Circuit has relied upon in upholding the Appeals Council's exclusion of late-submitted evidence. *See Wilson*, 2000 WL 719457, at *2; *Tollett*, 60 F. App'x at 265; R. 11-25, 77-80. The Appeals Council did not err in rejecting this evidence.

- *Dr. Craig Lembo's Records and Progress Notes*

Next, Plaintiff submitted records and progress notes showing three office visits to Craig Lembo, MD, from October to December 2013, for purposes of pain management. R. 26-33. There is no indication that Plaintiff had ever had been treated by Dr. Lembo prior to his visit on October 1, 2013, which was more than one year after the ALJ issued her decision. *See* R. 33 ("Patient is here for a first time visit and to establish with a new MD."). Dr. Lembo therefore could not have offered a reasoned assessment of Plaintiff's condition during the relevant time period. *Cf. Aragon*, 1998 WL 889400, at *2 (finding treating physician's opinion new, material, and temporally relevant). Further, although Dr. Lembo noted Plaintiff's self-reported past history and included a reference to "chronic pain," Dr. Lembo's diagnoses and treatment plan do not purport to opine as to Plaintiff's condition prior to August 10, 2012. *See* R. 26-33. The Appeals Council properly rejected this evidence as not related to the time period at issue. *See Wilson*, 2000 WL 719457, at *2; *Tollett*, 60 F. App'x at 265; *Breedlove*, 1997 WL 572145, at *2.

- *Disability Letter from Dr. Lance E. Rosson*

Plaintiff submitted a letter drafted on January 3, 2014, by Lance E. Rosson, DO, in which Dr. Rosson describes a one-time examination of Plaintiff in September 2013. R. 36-41. Based upon this examination (occurring more than one year after the ALJ's decision),

as well as Plaintiff's history and present complaints and filings from Plaintiff's worker's compensation disability litigation, Dr. Rosson opined that Plaintiff was "permanently and totally disabled and 100% economically unemployable." R. 37-41. Dr. Rosson's primary conclusion is based upon Plaintiff's condition as of September 2013 and does not purport to be retrospective to any date more than one year prior. *See* R. 41.[4] The Appeals Council properly concluded that Dr. Rosson's disability letter was not related to the time period of February 2009 to August 2012 that is relevant to Plaintiff's DIB application. *See Wilson*, 2000 WL 719457, at *2; *Tollett*, 60 F. App'x at 265; *Breedlove*, 1997 WL 572145, at *2.

- *Record of Dr. Shujahat Shah*

Plaintiff additionally submitted a record from Shujahat H. Shah, MD, showing that Plaintiff visited Dr. Shah one time in June 2013 at the Oklahoma Heart Hospital to undergo a myocardial perfusion imaging test on his heart. R. 63-71. Although in this record Plaintiff reports having suffered a heart attack in March 2013, nothing in either Plaintiff's reporting to Dr. Shah or Dr. Shah's stated opinion even arguably touches upon Plaintiff's condition prior to August 2012. *See* R. 63-65, 68-71; *Wilson*, 2000 WL 719457, at *2; *Tollett*, 60 F. App'x at 265; *Breedlove*, 1997 WL 572145, at *2. In addition, while Plaintiff had initially alleged cardiomegaly (enlarged heart) as one of his conditions that limits his

---

[4] Further, Dr. Rosson's statement regarding the ultimate question of whether Plaintiff is disabled is not a medical opinion under the applicable regulations and, therefore, would likely not be material under §§ 404.970(b) and 404.976(b)(1). *See Threet*, 353 F.3d at 1191 ("Evidence is material to the determination of disability if there is a reasonable possibility that it would have changed the outcome." (alteration and internal quotation marks omitted)); 20 C.F.R. § 404.1527(d)(1) (prescribing that an opinion that a claimant is disabled is not a medical opinion but an opinion on an administrative finding that is reserved to the Commissioner).

ability to work, R. 352, Plaintiff does not dispute on appeal the ALJ's step two finding that the medical evidence did not "establish the presence of any cardiac . . . impairment that has more than a minimal effect on the claimant's ability to do basic work activities" and that Plaintiff's "[c]ardiovascular testing was without evidence of abnormality." R. 224. The Tenth Circuit has held that the Appeals Council properly rejected evidence as not "specifically relat[ing]" to the relevant time period where the evidence was generated four months after the ALJ's decision and "contained no information asserting that [the] condition [due to which claimant claimed disability] had existed during the time period for which [claimant] sought benefits." *Breedlove*, 1997 WL 572145, at *1, *2; *see also Chambers*, 389 F.3d at 1143-44 ("[T]he EMG taken six months later, containing the first suggestion of a possible condition of unspecified duration and as yet unsubstantiated clinical presence, did not qualify under the regulations."); *Wall*, 561 F.3d at 1064 (holding that regulations prohibited consideration of evidence of a post-decision head injury); *Wilson*, 2000 WL 719457, at *2 (upholding rejection of new evidence regarding claimant's knee pain and arthritis where claimant's "principal complaint" at the hearing was of calf pain). The Appeals Council properly rejected Dr. Shah's record under 20 C.F.R. §§ 404.970(b) and 404.976(b)(1).

- *Disability Letter from Dr. John Munneke*

Plaintiff submitted a letter from John A. Munneke, MD, reflecting that the judge overseeing Plaintiff's worker's compensation lawsuit had requested Dr. Munneke to evaluate Plaintiff regarding the injuries from Plaintiff's work-related accident in February 2009. R. 83-86. Dr. Munneke had evaluated Plaintiff twice before: at the same worker's

compensation judge's request in January 2012, and at another individual's request in October 2011. R. 227, 678-84. In the late-submitted letter, Dr. Munneke advises that he examined Plaintiff on April 1, 2013, for the purpose of determining "whether or not the claimant has suffered a change of condition for the worse." R. 83. Dr. Munneke's conclusion—that Plaintiff did have such worsening and, "effective on the 1st of April of 2013," "is temporarily totally disabled"—expressly considers physical conditions that existed during the relevant time period, but the letter was authored nearly eight months after that period expired. R. 85. Further, Dr. Munneke does not attempt to reach a specific conclusion in this new evidence as to Plaintiff's condition at any point prior to August 10, 2012 (as he had done in the January 2012 letter, which was expressly considered by the ALJ). R. 83-86, 227, 678-84. For all of these reasons, the Appeals Council did not err in rejecting this disability letter. *See Wilson*, 2000 WL 719457, at *2; *Tollett*, 60 F. App'x at 265; *Breedlove*, 1997 WL 572145, at *2; *cf. Rhodes v. Barnhart*, 117 F. App'x 622, 625-26 (10th Cir. 2004) ("[I] is well established that remand will not be granted . . . if the new evidence shows only a subsequent deterioration of the previously nondisabling condition. In such cases, the appropriate remedy is to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment." (alteration, citation, and internal quotation marks omitted)).

- *Disability Letters from Dr. Hugh McClure*

Plaintiff submitted two disability letters from Hugh G. McClure, DC, dated August 22, 2012, and December 5, 2012, and reflecting that Plaintiff was evaluated by Dr. McClure on those dates. R. 125-30, 166-72. The later letter opines that as of December 5, 2012,

Plaintiff "is permanently, totally, and economically disabled" and "cannot be substantially gainfully employed in significant numbers in the national/local economy competitively." R. 129. Even if such an opinion could be considered material under the regulations, Dr. McClure's primary conclusion is based upon Plaintiff's condition as of December 2012 and does not purport to be retrospective to any date months prior. *See* R. 129; *Threet*, 353 F.3d at 1191; 20 C.F.R. § 404.1527(d)(1). The Appeals Council properly rejected this evidence as not relating to the period on or before the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), .976(b)(1); *Wilson*, 2000 WL 719457, at *2; *Tollett*, 60 F. App'x at 265; *Breedlove*, 1997 WL 572145, at *2.

In the earlier letter, which was written twelve days after the ALJ's decision was issued, Dr. McClure stated that he saw Plaintiff on that date for an independent medical examination in reference to Plaintiff's changed condition following Plaintiff's February 3, 2009 work-related accident. R. 166. Given the close proximity between the ALJ's decision and this August 22, 2012 letter, the undersigned cannot conclude that the letter was properly rejected as chronologically unrelated. *Cf. Chambers*, 389 F.3d at 1143 (noting "reluctan[ce] to rely on chronological remoteness to disqualify" evidence dated one day after ALJ's decision). Remand is not warranted, however, because de novo review shows that Dr. McClure's letter does not qualify as "material" evidence and thus was properly disqualified from consideration by the Appeals Council on that ground. *See Chambers*, 389 F.3d at 1142, 1144; 20 C.F.R. §§ 404.970(b), .976(b)(1).

As noted, "[e]vidence is material to the determination of disability if there is a reasonable possibility that it would have changed the outcome." *Threet*, 353 F.3d at 1191

(alteration and internal quotation marks omitted)). Dr. McClure's August 2012 letter cannot entertain any such reasonable possibility. In this letter, addressed to Plaintiff's attorney in the worker's compensation proceedings, Dr. McClure states that he evaluated Plaintiff regarding a possible change of condition following the work-related back injury on February 3, 2009. R. 166. Dr. McClure recounts Plaintiff's history (as was presented by Plaintiff or Plaintiff's attorney), his present complaints, and previous diagnostic studies. R. 166-68, 169. Dr. McClure then notes the results of his visual and physical examination of Plaintiff, including: "moving about . . . at an obvious antalgic gait and position"; "pain upon palpation along the right paravertebral musculature, which could be traced into the right buttocks and the posterior thigh"; and positive results on several lumbar orthopedic tests (Bechterew's Sitting, Lindner's, Lasègue's, and Bragard's). R. 168-69. Dr. McClure diagnoses Plaintiff with failed back syndrome and states that Plaintiff "has sustained a change of condition for the worse to the lumbar spine," "is temporarily totally disabled at this time," and "is in need of further medical care." R. 169-71.

As a threshold matter, although Dr. McClure is a licensed chiropractor, he is not an "acceptable medical source" under the federal regulations and thus cannot provide a medical opinion. *See* R. 172; 20 C.F.R. §§ 404.1513(a), (d)(1), .1527(a)(2). "Medical opinions are statements from  . . . acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Any information contained in this letter, therefore, would generally not be an opinion entitled to controlling weight, and "cannot establish the existence of a

medically determinable impairment," but would be considered "to show the severity of" Plaintiff's impairments and how they affected his ability to work. *Id.* § 404.1513(d); SSR 06-3p, 2006 WL 2329939, at *2, *4-5, *6 (Aug. 9, 2006). Further, Dr. McClure's letter was generated after only a single examination of Plaintiff, reflecting that Dr. McClure did not possess "special knowledge" of Plaintiff's condition, an ongoing relationship with Plaintiff, or any other specialized basis for judgment that might warrant the ALJ giving greater weight to Dr. McClure's letter than to the medical opinions of Plaintiff's treating sources. *See* SSR 06-3p, 2006 WL 2329939, at *2, *4-5, *6.

Dr. McClure's primary conclusion—issued not after provision of treatment but after an examination requested to further Plaintiff's worker's compensation suit—is that Plaintiff's work-related injury rendered Plaintiff permanently unable "to earn wages at the same level as before the injury," Plaintiff is "temporarily totally disabled," and Plaintiff "will remain temporarily totally disabled until he has reached maximum therapeutic benefit and has been released to return to work by his treating physician to his former employer in his former occupational capacity, or some other occupation fitting his impairments and/or disabilities." R. 170, 171. These conclusions constitute a nonmedical opinion on whether Plaintiff would be able to return to work, which is an issue reserved to the Commissioner, and the existence of such a statement "does not mean that [the Commissioner] will determine that [Plaintiff is] disabled." *See* 20 C.F.R. § 404.1527(d), (d)(1); *see also id.* § 404.1527(d)(3) (prescribing that no "special significance" is given to the source of an opinion on issues reserved to the Commissioner); *cf. Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (upholding ALJ's assignment of less than controlling weight to treating

physician's opinion regarding claimant's ability to return to work, which did not contain the physician's "judgment about the nature and severity of [claimant's] physical limitations, or any information about what activities [claimant] could still perform").

Finally, the lack of materiality of Dr. McClure's letter is evidenced through its failure to significantly contradict any finding in the ALJ's written decision. Like Dr. McClure, the ALJ considered Plaintiff's on-the-job injury, medical history and treatment, and complaints as of August 2012 in great detail. *Compare* R. 166-68, 169, *with* R. 224-28. Similarly to Dr. McClure, the ALJ found that Plaintiff's back condition imposed a significant restriction on his ability to work and prevented Plaintiff from working at any of his past jobs. *Compare* R. 168-71, *with* R. 224, 226-28. The ALJ likewise considered Plaintiff's complaints of pain, but the ALJ found Plaintiff's statements regarding his impairments' impact on his ability to work was not entirely credible—a finding that is adequately supported as outlined below. *See* Part C. *Compare* R. 168, *with* R. 226-28. Finally, Dr. McClure's observation that Plaintiff moved with an antalgic gait and position, R. 168, is reflected to some extent in the ALJ's note that Plaintiff was found to have "slight antalgic gait" in a disability letter by Dr. Munneke and by the ALJ's finding that Plaintiff "may well experience pain and discomfort at times and with certain activities." R. 227, 228, 679.

For all of these reasons, there is no reasonable possibility that consideration of Dr. McClure's August 2012 disability letter would have changed the outcome of Plaintiff's application. The letter was immaterial and therefore disqualified from consideration under 20 C.F.R. §§ 404.970(b) and 404.976(b)(1). *See Chambers*, 389 F.3d at 1144.

- *Records of Integris Clinton Regional Hospital and Weatherford Regional Hospital*

Plaintiff submitted to the Appeals Council several post-decision medical records relevant to his back and cardiovascular conditions. First, Plaintiff offered a record from his visit to the Integris Clinton Regional Hospital emergency room on March 3, 2013, for treatment of his complaints of chest pain. R. 110-22.[5] This record reflects that Plaintiff was evaluated for possible heart disease on that date; was given nitroglycerin, aspirin, and morphine; then left the hospital against medical advice. R. 110-13, 119, 121-22. Nothing in this record concerns Plaintiff's condition prior to August 2012. *See* R. 110-22. In addition, as outlined above in the discussion of Dr. Shah's records Plaintiff does not challenge the ALJ's failure to find any severe impairment associated with a cardiovascular condition or the lack of cardio-related limitations in the RFC determination. The Appeals Council properly rejected this evidence as not relating to the relevant pre-decision time period. *See Chambers*, 389 F.3d at 1143-44; *Wall*, 561 F.3d at 1064; *Wilson*, 2000 WL 719457, at *2; *Tollett*, 60 F. App'x at 265; *Breedlove*, 1997 WL 572145, at *2.

Second, Plaintiff submitted two radiology reports signed by John Hamlin, MD, providing results of a July 5, 2013 lumbar spine CT and a September 10, 2013 lumbar spine MRI. R. 35, 61, 104.[6] These reports, generated 11 and 13 months after the ALJ's decision,

---

[5] The record before the ALJ contained records from Plaintiff's previous visits to this same emergency room for treatment of ailments unrelated to chest pain or possible heart attack. *See* R. 439-62, 660-67.

[6] The July 5, 2013 CT report was submitted twice to the Appeals Council; one copy contains a handwritten note that appears to have been added later by a registered nurse in Dr. Hamlin's office: "07/18/2013 / No significant changes since 08/11 – MRI of T-spine and L-spine." *Compare* R. 61, *with* R. 104.

respectively, are merely a radiologist's impressions of the tests of Plaintiff's lumbar spine and "contain[] no information that this condition had existed during the time period for which [Plaintiff] sought benefits." *Breedlove*, 1997 WL 572145, at *2; *see* R. 35, 104. The Appeals Council did not err in rejecting this evidence. *See Wilson*, 2000 WL 719457, at *2; *Tollett*, 60 F. App'x at 265.

- *Records of Dr. Melvin Robison*

Finally, Plaintiff submitted treatment records from Melvin L. Robison, DO, dated from October 2012 through September 2013, reflecting that Plaintiff began seeing Dr. Robison for purposes of managing his back pain and later presented complaints related to his chest pain and hepatitis C. *See* R. 72-76, 87-103, 134-47, 159-61. In these treatment records, Dr. Robison addresses certain of the same complaints reflected in evidence from during the relevant time period, but Dr. Robison did not treat Plaintiff during that time period and does not purport to offer a reasoned opinion as to whether any specific condition(s) existed on or before August 10, 2012. *See* R. 72-76, 87-103, 134-47, 159-61. The Appeals Council properly rejected this evidence under 20 C.F.R. §§ 404.970(b) and 404.976(b)(1). *See Chambers*, 389 F.3d at 1143-44; *Wall*, 561 F.3d at 1064; *Tollett*, 60 F. App'x at 265; *Wilson*, 2000 WL 719457, at *2; *Breedlove*, 1997 WL 572145, at *2.

### 4. Conclusion

The Appeals Council did not commit legal error in rejecting Plaintiff's late-submitted evidence on the grounds that it did not qualify for consideration under 20 C.F.R. §§ 404.970(b) and 404.976(b)(1). With the exception of one disability letter, which was not "material" under those regulations, Plaintiff's late-submitted evidence did not "relate to" the

relevant time period, as that criterion has been applied by the Tenth Circuit. It follows that this evidence "plays no further role in judicial review of the Commissioner's decision." *Chambers*, 389 F.3d at 1142; *cf. id.* at 1143 (affirming disqualification of claimant's evidence pursuant to regulations; disclaiming reliance on magistrate judge's alternate holding that "even if some of the new evidence in question qualified under the regulations and, thus, should have been considered by the Appeals Council, the denial of benefit could still be affirmed" "because there would still be substantial evidence supporting the ALJ's determination" (internal quotation marks omitted)). Neither reversal nor remand is warranted on this claim of error.

### B. Whether the RFC Determination Is Supported by Substantial Evidence

Plaintiff argues that the factual findings underpinning the ALJ's RFC determination were not supported by substantial evidence in the record and that the RFC fails to take all of his limitations into account with respect to Plaintiff's severe impairments. Pl.'s Br. at 17-20. The undersigned addresses each contention in turn, applying the familiar standard used to review a substantiality claim. *See*, *e.g.*, *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

Plaintiff asserts both February 3, 2009, and March 3, 2009, as the date that his disability first arose due to a work-related back injury. R. 221, 224; *see* R. 328, 348, 435; Pl.'s Br. at 5. In the course of obtaining treatment of that injury, Plaintiff was diagnosed in late 2010 with hepatitis C. R. 510, 559. In January 2011, Plaintiff underwent disc

replacement surgery at L3-L4 in his lumbar spine, after which Plaintiff encountered issues with inguinal and abdominal pain. *See, e.g.*, R. 584, 611, 646. Plaintiff objects that the RFC determination does not adequately account for Plaintiff's spine condition, does not properly account for the medical expert's or vocational expert's testimony at the administrative hearing, and inaccurately assumes that Plaintiff's "initial injury-causing impairments have resolved" due to that 2011 surgery. Pl.'s Br. at 17-18. The undersigned disagrees, finding that the ALJ adequately considered Plaintiff's severe impairments of degenerative disc and joint disease, as well as hepatitis C, and appropriately included relevant work-related limitations thereon.

### 1. Lumbar Spine and Post-Surgery Pain

The ALJ found that Plaintiff was limited to light work—i.e., sitting two hours and walking/standing six hours in an eight-hour workday, with no more than 20 pounds of lifting at a time. R. 226; *see* 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *5-6 (1983). The ALJ additionally restricted Plaintiff to: only occasional climbing of stairs, crawling, and stooping; frequent balancing and kneeling; no climbing of ladders or scaffolding; and no exposure to unprotected heights or moving machinery. R. 226. *See generally* 20 C.F.R. § 404.1545(a)(1) (prescribing that a claimant's RFC is "the most" he or she can do despite his or her limitations). The ALJ's written decision includes a thorough discussion of the medical evidence, the hearing testimony, and other items in the record. R. 224-29.

With respect to Plaintiff's lumbar spine problems, Plaintiff objects that (i) the ALJ appears to have considered Plaintiff's January 2011 disc replacement surgery to have

resolved Plaintiff's back condition and, relatedly, that (ii) the ALJ improperly construed evidence that reflected only temporary pain relief from inguinal nerve root blocks by indicating that Plaintiff received total pain relief. Pl.'s Br. at 17-18. However, these assertions are not supported by the written decision: the ALJ heavily relied upon post-surgery items of evidence in reaching her RFC determination, and her discussion makes clear that she understood Plaintiff's complaints of post-surgery pain continued even after receiving inguinal nerve root blocks:

> [Plaintiff] was ultimately cleared for surgery, and in January 2011, he underwent ProDisc implantation. He had a postoperative course of physical therapy with good results regarding his back and radicular pain; however, he developed postoperative ilioinguinal neuritis, which was treated with inguinal nerve root blocks. An August 18, 2011 lumber myelogram with post-myelogram CT scan were within normal limits. On August 29, 2011, [Plaintiff's] neurosurgeon released him from care with a 20-pound lifting limitation. In November 2011, treatment for his hepatitis was begun, and this affected the medications available to prescribe for his musculoskeletal pain[.] . . . .
>
> . . . .
>
> . . . . Postoperatively, objective testing shows no significant musculoskeletal or neurological abnormalities, and physical examinations report no gross motor or sensory deficits in the lower extremities. The only contrary evidence is found in examinations performed in October 2011, and January 2012, by a physician who was seeing claimant only for purposes of worker's compensation at the recommendation of [Plaintiff's] attorney. Even then, only slight antalgic gait and 4/5 left leg strength was found; no neurosensory loss was found, and [Plaintiff's] strength in his right leg, which is the one that was affected by his injury, was within normal limits. The main residual is reported to be limitation of back range of motion and ongoing subjective pain complaints. Brent N. Hisey, M.D., the claimant's neurosurgeon, released him from care on August 29, 2011, with recommendation of a 20-pound lifting limit. It is noted that prior to surgery, the claimant had been advised to not lift over 25 pounds and do no significant pushing, pulling, climbing, crawling, or stooping. It is further noted that the claimant's general physician, J. M. Huser, III, M.D. advised him on August 30, 2011, to increase his physical activity and perform home back strengthening exercises. Dr. Hisey's opinion

regarding lifting restrictions is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. In accordance with Social Security Ruling 96-2p, it is entitled to controlling weight.

R. 224, 227 (citations omitted).

Plaintiff objects that the ALJ failed to note a neurosurgeon's statement that Plaintiff continued to have "the component of nerve injury as well as decreased range of motion" following his disc herniation. Pl.'s Br. at 17 (citing R. 468). However, this statement was made in a disability letter on November 23, 2009—over thirteen months before Plaintiff had the underlying problem of disc herniation, upon which that statement was based, surgically repaired in January 2011. R. 468. Plaintiff also complains that the ALJ's decision fails to adequately take into account Plaintiff's continued post-surgery pain. Pl.'s Br. at 17-18. In the quoted portions of the decision above, however, the ALJ's written decision expressly reflects that Plaintiff's complaints of inguinal pain were ongoing, even after receiving nerve root blocks. *See* R. 224, 227. Plaintiff does not specifically challenge the ALJ's assignment of controlling weight to treating physician's Dr. Hisey's post-surgery 20-pound lifting restriction, which is consistent with the ALJ's RFC determination that Plaintiff can perform light work (subject to additional restrictions). R. 224, 227, 654; *see* 20 C.F.R. § 404.1567(b); *infra* Part C (addressing propriety of ALJ's accepting this opinion despite Plaintiff's subjective pain complaints). And Plaintiff's argument that the ALJ's use of the term "treated" should be read to mean that the ALJ found that the nerve root blocks "resolved" Plaintiff's post-surgery pain is unavailing. The term "treated" does not carry that meaning nor does the context in which it was used suggest such a meaning: the ALJ did not

characterize the referenced treatment as permanently successful and recognized Plaintiff's lack of satisfaction with this treatment by describing in detail Plaintiff's post-surgery attempts at pain relief. R. 224-27; *see* Pl.'s Br. at 17-18. Reversal is not warranted on this basis.

2. *Testimony of the Medical Expert*

In addition to Plaintiff, an impartial medical expert ("ME") and an impartial vocational expert ("VE") appeared and testified at the administrative hearing. R. 181-213. The ALJ summarized the testimony of the ME, Ollie Raulson Jr., MD, in detail and gave it "great weight":

> The [ME] testified that the record shows degeneration in the lumbar spine. He provided good explanation regarding the implantation of an artificial disc, and he noted that [Plaintiff] had had a postoperative hematoma, which was drained but resulted in symptomology of il[i]inguinal neuritis. Dr. Raulston testified that no neurological deficits were recorded except on one occasion when Dr. Hisey, the claimant's treating surgeon, found absent right knee jerk; such finding is not found at any other time in the medical record. The medical expert testified that there was no evidence of record to show a meeting or equaling of Listing 1.04 or Listing 11.14. Dr. Raulston testified that the record did show conditions that would result in functional limitations; such limitations will be further discussed subsequently.

> The [ALJ] has considered the entire record and concurs with the [ME] testimony. . . . .

> . . . .

> Adding further support to the treating opinion [of Dr. Hisey] is the testimony of the medical expert, which has been given great weight. Dr. Raulston stated that, based on his evaluation of the medical evidence of record, [Plaintiff] would be restricted to lifting 20 pounds occasionally and 10 pounds frequently. He could sit, stand, or walk six hours during an eight-hour day. He could climb stairs, crawl, crouch, or stoop occasionally, and he could balance and kneel frequently. Dr. Raulston found no evidence to indicate that [Plaintiff] has any limitations in his upper extremity function. The [ME] did opine that [Plaintiff] should not work hazard-type duty such as climbing ladders or working around unprotected heights or heavy moving machinery.

The [ALJ] finds that the [ME] testimony also is consistent with the other substantial evidence in the record.

R. 225, 227; *see* R. 181-92, 295-96, 298-99.

Plaintiff does not allege that the ALJ misstated any of Dr. Raulston's testimony, but he objects that (i) the ALJ at no point in her decision mentions "the August 18, 2011 radiology report regarding invagination," and (ii) the ALJ improperly accorded great weight to Dr. Raulston's testimony because the ALJ omitted discussion of another portion of Dr. Raulston's testimony, in which Dr. Raulston responded to questioning regarding that August 18, 2011 report.  Pl.'s Br. at 18-19, 23 (discussing Exhibit 17F, R. 656-659).  The report referenced by Plaintiff actually is a pair of radiology reports, both issued on the order of Plaintiff's surgeon Dr. Hisey on that date, containing impressions from a lumbar myelogram and a post-myelogram CT scan of the lumbar spine.  R. 656-59.

Plaintiff's first contention is incorrect: the ALJ expressly mentions this evidence at step two of the decision.  R. 224 ("An August 18, 2011 lumbar myelogram with post-myelogram CT were within normal limits (Exhibits 16F, 17F).").  And Plaintiff's second contention does not demonstrate that the ALJ's assessment of Dr. Raulston's opinion, or the resulting RFC determination, is unsupported by substantial evidence.  Plaintiff characterizes these August 18, 2011 reports as "indicat[ing] that [Plaintiff's] Pro-Disc implantation may not have been as successful as the ALJ's decision would depict," and objects that the reports "could explain" Plaintiff's ongoing problems with pain, but the ALJ's decision did not depict Plaintiff's disc replacement surgery as entirely successful and expressly recognized Plaintiff's post-surgery pain complaints, as discussed above.  Pl.'s Br. at 18; *see* R. 224,

226-28. Next, these radiology reports do not themselves establish that Plaintiff was suffering from "disabling pain" following his surgery. The treating surgeon who ordered the myelogram and CT reviewed these reports and opined, in a letter cited by the ALJ, that the tests were "within normal limits. It appears that the L3-4 level will spontaneously fuse and there is no subluxation of the ProDisc prosthesis. There is no evidence of nerve root compression or thecal sac compression." R. 655; *see* R. 224 (citing Exhibit 16F).

Finally, Dr. Raulston's testimony regarding these radiology reports (which he had not actually seen prior to the hearing) did not unequivocally "confirm[] and corroborate[]" Plaintiff's complaints of pain, as alleged by Plaintiff. Pl.'s Br. at 18. Dr. Raulston was questioned on cross-examination as to findings in the reports that "the inferior component of the prosthetic disc" that had been placed at L3 "appears to have invaginated into the L4 vertebral body." R. 187, 656, 658. Upon questioning by Plaintiff's attorney, Dr. Raulston testified that the actual effect of such invagination or settling would depend upon various factors and "would depend on [the] degree" to which the L3 disc had settled into L4. R. 187-88. Dr. Raulston stated that: although there "could certainly be" pain associated with such settling, he could not testify as to the effect of such settling "with any certainty," any lateral pain would not be from this L3 issue, and that he did not know if Plaintiff's invaginated nerves were in fact compromised and thereby resulting in continued pain. R. 188-91 ("I just can't say pain in the right lower extremity's caused by the L3 disc collapse.").

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007,

1009-10 (10th Cir. 1996). The ALJ must discuss the evidence supporting her decision, the uncontroverted evidence she chooses not to rely on, and the "significantly probative evidence" that she rejects. *Id.* at 1010. For the reasons outlined above, the undiscussed portion of Dr. Raulston's testimony was neither uncontroverted nor significantly probative. The ALJ's omission of discussion of this testimony does not undermine the RFC determination in light of the ALJ's express consideration of the allegedly ignored reports, the written decision's recognition of the condition allegedly established by these reports, and the equivocal nature of both these reports and Dr. Raulston's hearing testimony. Reversal is not warranted on this basis.

### 3. Vocational Expert Hypothetical

When the disability analysis reaches step five of the sequential process, the burden shifts to the Commissioner to show that "there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments," *Jensen v. Barnhart,* 436 F.3d 1163, 1168 (10th Cir. 2005), "given [his] age, education, and work experience." *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c)(1). In making this determination, an ALJ may properly rely on a vocational expert's testimony if the claimant's impairments and limitations are adequately and precisely reflected in the hypothetical posed to the expert. *See Haddock v. Apfel,* 196 F.3d 1084, 1089 (10th Cir. 1999).

At the administrative hearing, the ALJ posed several different hypothetical scenarios to the VE, and Plaintiff's attorney followed with some variations. R. 206-13. Plaintiff objects that the ALJ erred in relying upon a certain hypothetical put forth to the VE because

the ALJ should have instead relied upon one of the alternative, more restrictive hypotheticals that was discussed at the hearing, pursuant to which Plaintiff would have been precluded from sedentary and light work. Pl.'s Br. at 19-20. Plaintiff's argument, however, incorrectly conflates steps four and five of the sequential analysis. Plaintiff objects that "the ALJ's RFC is not based on substantial evidence as she failed to present and/or adopt all of [Plaintiff's] impairments in her RFC as posed to the VE." Pl.'s Br. at 20. This attack is based upon the incorrect premise that the RFC ultimately adopted by the ALJ must include all of the impairments that were present in any hypothetical questions offered to the VE. Pl.'s Br. at 20 (selectively citing *Decker v. Chater*, 86 F.3d 953 (10th Cir. 1996); *Bean v. Chater*, 77 F.3d 1210 (10th Cir. 1995)). In other words, Plaintiff suggests that the mere inclusion of restrictions in a VE hypothetical amounts to a showing that these restrictions are supported by substantial evidence in the record and thus may not properly be omitted from the RFC.

This argument misapprehends the function of VE hypotheticals and of the substantial evidence requirement. There is no requirement that every condition included in a VE hypothetical that the ALJ does not rely upon in the decision must be supported by evidence in the record or included in the RFC determination. It is true that "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991) (internal quotation marks omitted). But if the ALJ does not ultimately adopt a hypothetical discussed by the VE, that hypothetical is not binding on the ALJ, is not reflected in the ALJ's decision, and need not constitute

substantial evidence to support that decision. *See Bean*, 77 F.3d at 1214 ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."); *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) ("[A]ny (essentially tautological) opinions premised on [an unestablished, conclusive fact required to be assumed by plaintiff's counsel] clearly would not bind the ALJ.").

Plaintiff's intertwined argument is that the RFC should have included restrictions regarding Plaintiff's need for additional or prolonged breaks, to lie down at his work station, and to take additional time to stand. Pl.'s Br. at 19-20. Beyond his attorney's questioning at the hearing, however, Plaintiff's argument in this regard fails to cite any specific evidence documenting that these actual functional limitations resulted from his impairments. Pl.'s Br. at 19-20; *see* 20 C.F.R. § 404.1529(a). Further, the ALJ properly discounted Plaintiff's subjective statements regarding such fatigue and delays, as explained below.

Plaintiff has not shown that the ALJ's RFC, or the ALJ's reliance upon the pertinent VE hypothetical, "is overwhelmed by other evidence in the record" or that "there is a mere scintilla of evidence supporting it." *Branum*, 385 F.3d at 1270. Reversal is not warranted on this basis.

## C. *The ALJ's Credibility Assessment*

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the individual's statements about [an impairment's] symptom(s) and its functional effects." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). "Credibility determinations are peculiarly within the province of the

finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). In determining a claimant's credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4. Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (internal quotation marks omitted). In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's credibility, including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at * 3; *accord* 20 C.F.R. § 404.1529(c)(3); *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004).

Plaintiff contends that the ALJ erred by failing to closely and affirmatively link his credibility findings regarding Plaintiff's allegations of "the intensity, persistence, and

functionally limiting effects of the symptoms" associated with his medically determinable impairments to substantial evidence in the record. Pl.'s Br. at 20-25; *see* SSR 96-7p, 1996 WL 374186, at *1. This argument implicates the framework for the proper analysis of a claimant's evidence of pain and other subjective symptoms, as first set forth in *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987), and more recently summarized in *Polly Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010).

In addressing Plaintiff's credibility, the ALJ stated:

[Plaintiff's] statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the medical history, the reports of the treating and examining practitioners, the findings made on examination, descriptions of his activities and life style, and the claimant's demeanor at [the] hearing. [Plaintiff] complains of left hand numbness. He says it takes him extra time to dress, and he cannot push or pull without experiencing abdominal pain. He says he can drive short distances, but he cannot take long trips in a vehicle without having to stop. He says he spends most of his day on the couch watching television; he says he watches television 10 to 15 hours a day. He reports that he tries to move with a riding mower, but he says he cannot do this for longer than 10 minutes at a time. [Plaintiff] testified that he continues to have right leg, back, and abdominal pain daily. He reports forgetfulness and fatigue, which he thinks may be related to his hepatitis. He testified that he has not yet begun treatment for hepatitis as he was denied medical assistance. The claimant has impairments that are reasonably expected to produce the type of pain he alleges, but his complaints suggest a greater severity of impairment than is shown by the objective medical evidence.

. . . .

Even the claimant's statements and testimony reveal that he is participating in various activities that fail to contraindicate the abilities to perform certain light tasks. He says he is able to provide for his own hygiene. He says he can fix a sandwich or bowl of soup. He says he can drive short distances. He attends doctor appointments and physical therapy sessions. He watches television, loads the dishwasher, makes lunch for himself, feeds his dog, does his laundry, and shops for groceries. He reports that he can pay bills and handle his financial affairs. He says he goes to lunch with a friend every couple of weeks.

The [ALJ] finds that [Plaintiff's] testimony, to the extent that it is construed to indicate that he is incapable of all examples of vocational functioning due to pain, such testimony cannot be accorded controlling weight in this case. While the claimant may well experience pain and discomfort at times and with certain activities, such is not established, through substantial evidence, to be of disabling proportions. Accordingly, the [ALJ] cannot credit his testimony regarding pain to the extent he has alleged.

R. 226-28.

Plaintiff first objects that the ALJ adopted Plaintiff's treating surgeon Dr. Hisey's recommendation of a 20-pound lifting limit rather than crediting Plaintiff's own allegations that he received only temporary relief from disabling pain following his disc replacement surgery. Pl.'s Br. at 22-23; *see* R. 224, 227, 654. Although Plaintiff does not specifically challenge the ALJ's assignment of great weight to Dr. Hisey's opinion, Plaintiff suggests that Dr. Hisey's 20-pound lifting limit, imposed upon Dr. Hisey's release of Plaintiff from his care, was unfounded because Dr. Hisey had previously recommended that a functional capacity exam be performed prior to this release, and no such exam was performed. Pl.'s Br. at 22-23; *see* R. 654, 655. This allegation is meritless: Dr. Hisey explicitly withdraws his recommendation for a functional capacity evaluation in the course of imposing this 20-pound lifting limit, and Dr. Hisey nowhere in his opinion suggests that he lacked sufficient information to reach his conclusions therein. *See* R. 654.

Plaintiff also objects that Plaintiff only testified at the hearing as to some, not all, of the daily activities listed by the ALJ in the quoted language above. Pl.'s Br. at 23. This argument ignores the detailed adult function reports submitted into the record by Plaintiff, in which Plaintiff stated that he feeds and waters a dog; cares for his own hair, shaving, and feeding; prepares coffee, sandwiches, frozen dinners, and soup; loads the dishwasher; does

laundry; attempts to mow grass on a riding mower; goes grocery shopping; and has lunch with a friend every couple of weeks. *See* R. 361-76, 385-92.[7]  A claimant's ability to engage in daily activities and a lack of prescribed limitations by physicians may support an adverse credibility assessment. *See Polly Wilson*, 602 F.3d at 1146; *Rabon v. Astrue*, 464 F. App'x 732, 735 (10th Cir. 2012).  An ALJ also may properly consider her personal observations of the claimant in conducting her overall evaluation of the claimant's credibility. *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).[8]

Read in the context of the entire decision, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not purely conclusory and is sufficiently "linked to substantial evidence." *See Polly Wilson*, 602 F.3d at 1144-45.  An ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence," and all of the reasons cited by the ALJ in the decision for discounting Plaintiff's credibility are well supported by the record. *See* R. 226-28; *Qualls*, 206 F.3d at 1372.  Further, the Court should not "engage in an impermissible reweighing of the evidence" or "substitute [its] judgment for

---

[7] Although one of these function reports appears to have been filled out by Plaintiff's ex-wife, who attended the hearing, they both identify Plaintiff himself as the person completing the report. *See* R. 180, 376, 392.

[8] Although the ALJ references Plaintiff's testimony that he had not started a certain course of hepatitis C treatment due to failure to receive assistance, it is not clear from the surrounding discussion that the ALJ actually discounted Plaintiff's credibility on this basis.  *See* R. 226-27.  In any event, the hearing testimony reflects that the ALJ specifically inquired as to, and understood, Plaintiff's testimony as to why he had not yet begun a new course of treatment.  *See* R. 194-96; SSR 96-7p, 1996 WL 374186, at *7 ("[T]he ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain . . . failure to seek medical treatment.").

that of the Commissioner." *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Plaintiff has not shown that reversal is warranted on this basis.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Any such objections must be filed with the Clerk of this Court by September 29, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 15th day of September, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE